IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ASSOCIATION OF CLEVELAND FIREFIGHTERS, LOCAL 93 OF THE INT'L ASS'N OF FIREFIGHTERS, et al., | ) ) ) ) | Case No. 1:04CV2007 |
| Plaintiffs | ) ) | |
| vs. | ) ) | JUDGE ANN ALDRICH |
| CITY OF CLEVELAND, OHIO and CIVIL SERVICE COMM'N OF CITY OF CLEVELAND, | ) ) ) ) | |
| Defendants. | ) | MEMORANDUM AND ORDER |

This is a constitutional case, in which the plaintiffs pose a challenge to Cleveland's requirement that certain municipal employees, including firefighters, must establish residency in the city. Plaintiffs are the Association of Cleveland Firefighters, encompassing all members of Local 93, IAFF, as well as three individuals – Samuel Devito ("Devito"), Don Posante ("Posante"), and James Sliter ("Sliter") – who claim to have been individually harmed by the residency requirement (collectively, "the Firefighters"). Defendants are the City of Cleveland and the city's Civil Service Commission, allotted the task of managing appointment and promotion of firefighters by the City Charter (collectively, "the City"). Now before the court is a motion to dismiss for failure to state a claim filed by the City (Docket No. 8). For the following reasons, the court grants this motion and dismisses the Firefighters' complaint.

**I. Background**

The Firefighters challenge the residency requirement codified in §74(a) of Cleveland's City Charter, effective November 29, 1982. Section 74(a) provides:

> Except as in this Charter otherwise provided or except as otherwise provided by a majority vote of the Council of the City of Cleveland, every temporary or regular officer

> or employee of the City of Cleveland, including members of all City boards and commissions established by the Charter or the ordinances of Cleveland, whether in the classified or unclassified service of the City of Cleveland, appointed after the effective date of this amendment, shall, at the time of his appointment, or within six months thereafter, be or become a bona fide resident of the City of Cleveland, and shall remain as such during his term of office or while employed by the City of Cleveland.

The Firefighters' complaint details the difficult personal and family circumstances which led the three individually-named plaintiffs to seek exemption from the residency requirement, as well as the categorical denials issued to these individuals by City officials.

Devito alleges that he requested an exemption from the residency requirement[1] on two occasions: in April of 1995, and in July of 2004. In the first instance, Devito claimed that his son's brain tumor, and the ensuing chemotherapy (and its side effects, including complete blindness) required the child to reside in a single-story house, such as the one inhabited by Devito's ex-wife. Devito sought an exemption to allow him to live near this residence. Following his son's death, Devito again requested an exemption, due to his mother-in-law's debilitating illness. On both occasions, his requests were denied.

In October of 2003, Posante requested an exemption from the residency requirement, to allow him to share a residence with his mother-in-law, who required around-the-clock assistance. He, too, was denied an exemption by city officials.

Finally, James Sliter was shot in the neck by a gang in 1995 while walking with his wife in the City of Cleveland. Sliter has sought an exemption on the basis of two claims: that the gang members responsible for the shooting have been released from jail and present a direct threat to him, and that he would like to live near his children, who have resided with Sliter's wife since his 1996 divorce.

---

[1] In its motion to dismiss, the City implies that several of the applications alleged by individual plaintiffs were not made through the proper channels. As this dispute has proved to be immaterial, the court will not resolve it, but instead proceed on the assumption that all exemptions were properly requested.

The Firefighters also allege that city officials facing less egregious circumstances have been granted exemptions from the requirement, though they do not elaborate on these cases .

## II. Discussion

In analyzing a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), the court "must construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Prater v. City of Burnside,* Ky., 289 F.3d 417, 424 (6th Cir. 2002), *cert. denied*, 537 U.S. 1018 (2002). The weight of the evidence and the credibility of witnesses generally are not factors to be considered when resolving a motion to dismiss. "A motion to dismiss under Rule 12(b)(6) should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Buchanan v. Apfel*, 249 F.3d 485, 488 (6th Cir. 2001)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

In seeking a declaratory judgment against § 74(a), the Firefighters argue that the City grants exemptions to the residency requirement in an arbitrary and capricious fashion, thereby running afoul of the Fourteenth Amendment's guarantee of equal protection. They also allege that the requirement violates their fundamental right to travel.[2]

Opposing the City's motion to dismiss, the Firefighters assert that "all persons similarly situated shall be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985). They claim that other City employees were granted exemptions from the residency requirement, and were thus treated differently than the individually-named plaintiffs, who were denied an exemption.

---

[2] The Firefighters initially advanced a claim for violation of Article 12 of the International Covenant on Civil and Political Rights, which provides that "everyone lawfully within the territory of a State shall within that territory have the right to liberty of movement and freedom to choose his residence within the borders of each state." As the City points out in its reply brief (Docket No. 14), however, the Firefighters have since abandoned this argument. They now limit their argument to the arena of fundamental rights as protected by the due process and equal protection clauses.

In considering equal protection claims, the Supreme Court has held that a classification imposed by a state, municipal charter, or city council "neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." *FCC v. Beach Communications*, *Inc.*, 508 U.S. 307, 314-15 (1993). "Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 320, (1993). "The Constitution presumes that, absent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and that judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Beach Communications, Inc.*, 508 U.S. at 314 (quoting *Vance v. Bradley*, 440 U.S. 93, 97, (1979)). Therefore, "[t]hose attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *Id.* at 315.

In accordance with this deferential standard, the federal appellate courts have repeatedly held that municipal residency requirements do not violate a citizen's Fourteenth Amendment right to equal protection under the law. In *Campbell v. City of Allen Park*, 829 F.2d 576 (6th Cir. 1987), the Sixth Circuit upheld Allen Park's termination of a Fire Department employee who did not meet the municipality's residency requirements. Likewise, in *Gusewell v. City of Wood River*, 374 F.3d 569 (7th Cir. 2004), the court stated that "[t]here are numerous conceivable reasons for retaining a residency requirement for government employees," *id.* at 578, before observing that "this court and others have repeatedly found that residency requirements are rationally related to a legitimate governmental interest." *Id.* (citing *McCarthy v. Philadelphia Civil Serv. Comm'n,* 424 U.S. 645 (1976); *Andre v. Bd. of Trustees*, 561 F.2d 48, 50 (7th Cir.1977); *Wardwell v. Board of Education*, 529 F.2d 625, 628 (6th Cir. 1976); *Fedanzo v. City of Chicago*, 333 Ill. App. 3d 339, 775 (Ill. App. 2002)). *See also Wright v. City of*

*Jackson, Mississippi*, 506 F.2d 900, 903 (5th Cir. 1975)("[N]umerous [courts] have held that a municipal employee residence requirement bears a rational relationship to one or more legitimate state governmental purposes, and hence is constitutional under the traditional equal protection test.")

The City relies heavily on *McCarthy*, in which the Supreme Court upheld Philadelphia's residency requirement against challenges raised by firefighters, on both due process and equal protection grounds. The Court in *McCarthy* described the appellant's case as claiming "a constitutional right to be employed by the city of Philadelphia while he is living elsewhere." *Id.* at 646-47. The Court found "no support in our cases for such a claim." *Id.* The Firefighters in the instant case do not face a predicament that appears in any way differentiable from those faced by the firefighters in *McCarthy* or the policemen in *Detroit Police Officers Association v. City of Detroit*, 190 N.W.2d 97 (Mich. 1971), *cert. denied*, 405 U.S. 950 (1972), a case whose holding provides much of the basis for the Court's opinion in *McCarthy*.

The Firefighters do argue that, unlike the regulation upheld in *McCarthy*, Cleveland's residency requirement is not appropriately defined or uniformly applied. In so doing, they direct the court's attention to *McCarthy*'s emphasis on "the validity of *appropriately defined and uniformly applied* bona fide residency requirements."424 U.S. at 647 (quoting *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 255 (1974))(emphasis added). This language suggests that the Firefighters might sustain a facial challenge by demonstrating that the City's requirement is unconstitutionally vague, or an as-applied challenge by producing evidence that similarly situated residents were treated differently under the terms of the requirement.

The pleadings filed to date by the Firefighters demonstrate that they will be able to accomplish neither task. The requirement codified in § 74(a) is, on its face, no more or less vague than the regulations

-5-

upheld in the bevy of cases cited by both parties.[3] Section 74(a): applies to City officials; sets forth a six-month grace period for new employees to obtain residence in Cleveland; and permits exceptions, both at the discretion of an administrative body (in this case, the City Council) and where "otherwise provided" in the City Charter. Each of these components has been upheld against a challenge identical or materially similar to that raised by the Firefighters; none of the equivalent requirements has been deemed void for vagueness.

The Firefighters limit their allegations regarding application of the residency requirement to the repeated assertion that unnamed "City officials" have been granted exemptions, while the individual plaintiffs were either denied exemptions, or in some way informed that applying for one would be fruitless. At best (and if proved), these allegations can only establish a pattern of denying exemptions to *all* firefighters, while (potentially) allowing City officials in less emergency-related positions to reside outside city limits. Courts have repeatedly upheld this precise pattern of behavior as constitutionally permissible.

Upholding a residency requirement that specifically targeted police officers, the Michigan Supreme Court explained:

> The job of a policeman does have 'natural distinguishing characteristics' from all other city employees. There is a special relationship between the community policed and a policeman. A policeman's very presence, whether actually performing a specified duty during assigned hours, or engaged in any other activity during off-duty hours, provides a trained person immediately available for enforcement purposes.
>
> Policemen are required by department order to be armed at all times, and why is this? Simply because by such a requirement they are, no matter where they are or what they are doing, immediately prepared to perform their duties. They are charged with law

---

[3] These include, *inter alia*, *Gusewelle*; *Campbell*; *Salem Blue Collar Workers Ass'n v. City of Salem*, 33 F.3d 265 (3rd Cir. 1994); *Buckley v. City of Cincinnati*, 406 N.E.2d 1106 (Ohio 1980); and *Associated Adjusters of Ohio, Inc. v. Ohio Dept. of Ins.*, 363 N.E.2d 730 (Ohio 1977).

As the City notes, the *McCarthy* Court does not provide the text of the relevant requirement before upholding it in accordance with *Detroit Police Officers*.

-6-

>enforcement in the City of Detroit, and obviously must be physically present to perform their duties. The police force is a semi-military organization subject at all times to immediate mobilization, which distinguishes this type of employment [ ].

*Detroit Police Officers Association*, 190 N.W.2d at 98. *See also Ahern v. Murphy*, 457 F.2d 363 (7th Cir. 1972)(upholding Chicago requirement for policemen).

The Fifth Circuit extended this rationale to requirements directed at firefighters, finding that "[t]he fact that both *Detroit Police Officers Association* and *Ahern* concerned residency requirements applicable to policemen does not distinguish them from this case dealing with firemen." *Wright*, 506 F.2d at 903. The Seventh Circuit also noted the importance of keeping "resident employees ... available for work emergencies on short notice," *Gusewell*, 374 F.3d at 578, before upholding the application of a residency requirement to a *golf course mechanic*. The court acknowledged that "there are probably not too many middle-of-the-night emergencies where a golf course mechanic would be needed," *id.*, but reminded the plaintiff that "the burden is upon the challenging party to negative any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (quoting *Bd. of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 367). Like the golf course mechanic, the Firefighters have failed to carry this burden.

The Firefighters also cannot prevail on their claim that §74(a) interferes with their enjoyment of a fundamental right to travel. The Supreme Court considered, and rejected, this specific claim in *McCarthy*, 424 U.S. at 646. The Sixth Circuit has likewise considered, and rejected, the argument that residency requirements unconstitutionally impact fundamental rights to travel and to marry.

>In essence plaintiffs assert that because the Supreme Court has recognized a right to travel and a right to marry as "fundamental" rights, the Equal Protection and Due Process Clauses require the use of particularized objective standards in granting or withholding any waiver of the residency requirement so as to minimize any interference with those rights. The plaintiffs might have a point if their case were based on the First Amendment. This is not a First Amendment case, however, and we would not be justified in proceeding as if it were.

> The Supreme Court has stated that any durational residence requirement impinges to some extent on the right to travel, but only those which are penalties upon the exercise of the constitutional right of interstate travel are unconstitutional. ... The failure of the City of Allen Park to establish objective particularized standards for denying exemptions from the residency requirement does not ... penalize interstate travel. The city's denial of the exemption was [thus] not irrational, and we are unwilling to hold it unconstitutional.

*Campbell*, 829 F.2d at 581 (citations omitted). For the same reasons, the Firefighters' identical claims must fail.

Finally, it should be noted that, like the Fifth Circuit in *Wright*, this court "of course, take[s] no position on the policy decisions involved in adopting a municipal residency requirement. We hold only that the City ... may validly enact such a policy free of any federal constitutional restraint." 506 F.2d at 904.

### III. Conclusion

For the foregoing reasons, the Court grants the City's motion, and dismisses the complaint in its entirety.

This order is final and appealable.

IT IS SO ORDERED.

                                                /s/ Ann Aldrich
                                                ANN ALDRICH
                                                UNITED STATES DISTRICT JUDGE

**Dated: March 22, 2006**